DANIEL J. BRODERICK, #89424
Federal Defender
DOUGLAS BEEVERS, USVI Bar #766
Assistant Federal Defender
Designated Counsel for Service
801 I Street, 3rd Floor
Sacramento, California 95814
Telephone: (916) 498-5700

Attorney for Defendant
CHRISTOPHER JACKSON

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No.   2:11 CR 00054 GEB |
| Plaintiff, | ) ) | AFFIDAVIT IN SUPPORT OF OPPOSITION TO MOTION TO REVOKE RELEASE |
| v. | ) ) | |
| CHRISTOPHER JACKSON, | ) ) | Date: June 27, 2012 Time: 2:00 p.m. |
| Defendant. | ) ) ) | Judge: Hon. Gregory G. Hollows |

I, Juan Doig, declare as follows;

1. I am a staff investigator with the Office of the Federal Defender, Eastern District of California, 801 I Street, 3rd Floor, Sacramento, CA, 95814.

2. On Friday, June 21, 2012, I was present by telephone for an interview of Ontario Haynes in which Special Agent Snograss and AUSA Matt Segal were also present by telephone.

3. Mr. Haynes has known Jackson for 20 years and has been talking to him about investing since 2002.

4. Mr. Haynes was not aware that Jackson was no longer in the investment business and he believed that the film project was an opportunity connected to Jackson's company. Mr. Haynes was not aware that he was the only investor.

5. Mr. Jackson did not talk about the project as an "investment," he used the word "loan" in their initial conversations. However, Mr. Haynes explained that although they were friends for a

long time it was not such a close friendship that he would lend Jackson $7,500 to help with personal problems. Rather their relationship involved some prior deals connected to the music industry and he believed Jackson had the ability to actually make $10,000 or more by producing something related to the music industry. Mr. Haynes did not ask much about the details of the venture because he believed Jackson could make money and still had a lot of money. Mr. Haynes remembers the deal as being that he gave $7500 and would receive $10,500 in a very short time.

6. Jackson discussed several projects including a story about the killing of Tupac and a movie script about super-heros. Mr. Haynes never asked if all of his $7500 was to be paid for the script or whether $3,000 would be used for trips to LA to meet with movie executives, however the purchase of the script was the only use of the money that was discussed. It was clearly understood that all of the money would be used for the project.

7. After Jackson did not pay back the money Mr. Haynes called the scriptwriters directly to check on the project and they acted very suspicious, so he became suspicious. Mr. Haynes searched for information about Jackson and discovered that Jackson had been indicted and even discovered that his pretrial conditions prohibited investments. Mr. Haynes confronted Jackson about having invested with Jackson when he was not supposed to do any investments. Mr. Haynes said that Jackson insisted that the condition did not apply to the kind of deal he had with Mr. Haynes and he would pay him back. Mr. Haynes stated that he was not sure if Jackson intended to defraud him when he got the money, but he was sure that Jackson understood that the money was for an investment not a purely personal loan.

I declare under penalty of perjury that the above is true and correct to the best of my knowledge and belief.

Executed in Sacramento, CA on this 26th day of June 2012.

*/s/Juan Doig*
Juan Doig

2