HEATHER E. WILLIAMS, Bar #122664
Federal Defender
DOUGLAS BEEVERS, Bar #288639
Assistant Federal Defender
Designated Counsel for Service
801 I Street, 3rd Floor
Sacramento, California 95814
Telephone: (916) 498-5700

Attorney for Defendant
CHRISTOPHER JACKSON

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CHRISTOPHER JACKSON,<br><br>　　　　　Defendant.<br>_____ | No. 2:11 CR 00054 TLN<br><br>DEFENDANT CHRISTOPHER JACKSON'S MOTION TO CORRECT PRE-SENTENCE REPORT/OBJECTIONS TO PRE-SENTENCE REPORT |

Defendant, Christopher Jackson, though counsel formally notes his objection to the enhancements reported in the pre-sentence report.

**(1) Paragraph 34.**

Mr. Jackson objects to the loss calculation of $16,063,280 which appears to be the loss amount for all the groups. Mr. Jackson's loss amount should be based on his own conduct, since there is no proof that he knew others were engaged in fraud until the final months of the business operation. Mr. Jackson contends that the $2.5 million which he did invest in real estate must be deducted from the loss amount as well as the amounts returned to the investors.  In addition, Mr. Jackson contends that some of the persons counted as "victims" are actually co-

1 defendants such as co-defendants Nicolo and Erica Arceo who should be
2 excluded. In addition, the Government has conceded that Nicolo and
3 Erica Arceo testified honestly when they stated at trial that they did
4 not start committing fraud until after they had worked for Michael
5 Bolden for substantial period of time, so it is probable that many of
6 the investors who were brought into the business by the Arceos were not
7 actually defrauded by anyone.  These investors must be excluded from
8 the loss amount unless the Government can prove that Mr. Bolden did not
9 invest the money and that Mr. Jackson knew that Mr. Bolden was stealing
10 from people who invested with the Arceos.  Mr. Jackson contends that
11 his correct loss amount is probably in the $7 million - $19 million
12 dollar range for a +20 level enhancement.  Mr. Jackson also objects to
13 any finding that the credit-use buyer program was fraudulent, since
14 that was not proved at trial.  Mr. Jackson requests an evidentiary
15 hearing at which the Government bears the burden of proving the loss
16 amount attributed to Mr. Jackson exceeded $7 million. *See United States*
17 *v. Ameline*, 409 F.3d 1073, 1086 (9th Cir. 2005).

**(2) Paragraph 36.**

Mr. Jackson agrees that the +4 enhancement applies, because the total number of victims was probably between 50 and 249.  Mr. Jackson agrees he should be held responsible for any of the 90 investors who invested in his club and whose money he handled, not the 235 listed in paragraph 36.  Mr. Jackson does contend that according to *U.S. v. Showalter*, 569 F.3d 1150, 1161 (9th Cir. 2009), the pre-sentence report should explain how the victim number was reached.

**(3) Paragraph 40: Abuse of Trust Enhancement**

Mr. Jackson objects to the abuse of trust enhancement.  He did not informally object, since it was not included in the draft pre-sentence report.  The abuse of trust enhancement applies if "the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." USSG §3B1.3; *U.S. v. Contreras*, 581 F.3d 1163, 1165 (9th Cir. 2009). "Public or private trust" refers to a position of public or private trust characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference). USSG § 3B1.3 cmt. n. 1 (2005). This adjustment, for example, applied in the case Case 2:11-cr-00054-TLN Document 254 Filed 09/03/14 Page 6 of 12 of an embezzlement of a client's funds by an attorney serving as a guardian, a bank executive's fraudulent loan scheme, or the criminal sexual abuse of a patient by a physician under the guise of an examination. Id.

According to *Contreras*, professional or managerial discretion is "the signature characteristic of a position of trust." *See Contreras*, supra, at 1166, citing *United States v. Reccko*, 151 F.3d 29, 32 (1st Cir. 1998).

> Application note 1 reinforces this conclusion by distinguishing various occupations, noting that the enhancement might apply to an attorney, physician, or bank executive… We have previously held that the listing of professions in the commentary demands "reasoning by analogy, not just reference to dictionary definitions," and that therefore a position of trust refers to "people trained or employed at a high level." *United States v. Lee*, 296 F.3d 792, 798-99 (9th Cir. 2002).F.3d 634, 637 (6th Cir.2000).

*Contreras*, at 1166; *see also U.S. v. Regensberg*, 635 F.Supp.2d 306 (S.D. N.Y. 2009)(although the defendant in the wire fraud case was able

Formal Objections                          -3-

to perpetrate his fraud largely because of his personal relationships with his victims, abuse of trust enhancement was impermissible because victims did not provide defendant with discretion in connection with investing their money).

Moreover, the abuse-of-trust adjustment under § 3B1.1 is justified where the defendant has abused a fiduciary relationship or discretionary authority entrusted by a victim of the crime. *U.S. v. Williams*, 527 F.3d 1235, 1250 (11th Cir. 2008).

In Mr. Jackson's case the witnesses uniformly agreed at trial that Mr. Jackson claimed he had no training in investing and many were aware that he only had a G.E.D. The witnesses in this case all testified that they did not give Mr. Jackson discretion to decide what investments to make or even what land to buy - they required him to buy the specific Sycamore properties they were orally promised.  It was clear from the evidence that Mr. Jacksonw as not involved in running the actual investments, rather he was only a salesman for a business whose profitability depended on Michael Bolden's real estate investing skill. The abuse of position of trust enhancement only applies when the victim places some special trust beyond that necessary for fraud to occur. *United States v. Stephen*, 440 Fed. Appx. 824 (11th Cir. 2011).

**(4) Paragraph 41: Obstruction of Justice**

Mr. Jackson objects to the enhancement for obstruction of justice, because he denies he testified falsely at trial. Defense notes that Mr. Jackson had essentially confessed to all the elements of the offense in a debriefing years before trial, and he was on notice that he could be impeached with that confession (which was already marked as an Exhibit) if he denied anything in that confession.  Special Agent Snodgrass, who

Formal Objections                          -4-

took that debriefing confession, was in the courtroom listening to Mr. Jackson's testimony and was immediately available to impeach him with his confession. As a result, Mr. Jackson admitted everything necessary to prove that he took investors money and spent it on personal expenses. These facts were clearly sufficient to convict for mail fraud as instructed by the court. At jury instruction 16, the Court at the Government's request instructed the jury that the reckless misrepresentation was sufficient to defeat a claim of good faith. Dockt 208 p. 18. The Court also instructed the jury that the defendant's belief that victims would be paid in the future or would sustain no loss was not a defense.

Based on these jury instructions Mr. Jackson's claims that he believed the victims would be paid or would profit were not a claim of defense are were not legally relevant. Mr. Jackson disputed whether the incorrect information he gave would have been material to an investor, but materiality was determined by an objective standard so Mr. Jackson's opinion was not relevant.

In addition, Mr. Jackson was testifying about events which happened between 2006 and 2008, for which he kept few records, so it is quite likely that he forgot much of what happened and his testimony was influenced by his imperfect memory. According to §3C1.1 application note 2, trial courts are advised to be cognizant of the fact that inaccurate testimony may result from bad memory. Mr. Jackson was using alcohol heavily during the time of the indictment which could effect his memory. Finally, Mr. Jackson did not carefully review any of the Government's evidence before his testimony and based his testimony only on his recollections of what he thought 7 years earlier.

The Government has not pointed to any material fact which he

Formal Objections                    -5-

allegedly knowingly lied about. The obstruction of justice enhancement for testimony is Note 4(b) which requires proof of a defendant "committing perjury." Perjury requires proof that the statement is material.

**(5) Paragraph 42: Acceptance of Responsibility**

Mr. Jackson accepted that he caused the losses, but he denies that the mail fraud statute applies to a person who believed he would eventually succeed.

**(6) Paragraph 39: Role in the Offense**

Mr. Jackson objects to the pre-sentence report classifying him as a leader which adds +4 levels to his guideline calculation and increases his guideline range from level 37 (range of 210 - 262 months) up to 41 (range of 324-405 months). The fact that he "assisted the bi-weekly seminars" does not make him a supervisor or leader which would justify a 110 month increase in sentencing guidelines). According to the testimony at trial his "manager" title merely reflected that he was a high earner, not that he gave anyone else instructions on how to run the business. . In *United States v. Woods*, 335 F.3d 993, 1001-02 (9th Cir. 2003), the Ninth Circuit found the trial court erred in applying the enhancement when the record failed to show that defendant managed any of the participants even though the defendant was a manager at the company. The fact that Mr. Jackson was a high earner is already captured in his loss amounts. If the application of the enhancement is based on resolution of a factual issue appellate review is for clear error, but if the application depends on interpretation of the guideline term "manager,"  de novo review applies. *See United States v.*

Formal Objections          -6-

*Garro*, 517 F.3d 1163, 1167 (9th Cir. 2008).

The Government bears the burden of establishing by a preponderance of the evidence that the defendant functioned as a manager. *United Sates v. Hoac*, 990 F.2d 1099, 1110-1111 (9th Cir. 1993); *United States v. Wilson*, 900 F.2d 1350, 1354 (9th Cir. 1990). However, where a factual finding has a disproportionate effect on a sentence clear and convincing evidence standard applies. For large sentencing enhancements the Ninth Circuit has held that due process requires that clear and convincing evidence burden of proof, even with advisory guidelines. *United States v. Staten*, 466 F.3d 708 (9th Cir. 2006). The Ninth Circuit explained what factors to consider in determining when heightened proof is required:

> (1) whether "the enhanced sentence fall[s] within the maximum sentence for the crime alleged in the indictment;" (2) whether "the enhanced sentence negate[s] the presumption of innocence or the prosecution's burden of proof for the crime alleged in the indictment;" (3) whether "the facts offered in support of the enhancement create new offenses requiring separate punishment;" (4) whether "the increase in sentence [is] based on the extent of a conspiracy;" (5) whether "the increase in the number of offense levels [is] less than or equal to four;" and (6) whether "the length of the enhanced sentence more than double[s] the length of the sentence authorized by the initial sentencing guideline range in a case where the defendant would otherwise have received a relatively short sentence.

*United States v. Jordan*, 256 F.3d 922, 928 (9th Cir. 2001). Most significantly for the Jordan test the +4 enhancement increases the guideline calculation beyond the 20-year statutory maximum for the crime alleged. Also in Mr. Jackson's case, the facts offered in support of the leadership enhancement are new uncharged offenses of a conspiracy with defendants who were not at his trial or for aiding and abetting his co-defendants in their counts in the indictment almost all of which were never proved at trial or even proved by a co-defendant's

plea.  Defense contends that due process prevents the Government from not charging Mr. Jackson with aiding and abetting the co-defendant's counts of the indictment but seeking to prove the guilt by means of a leadership enhancement.

In determining an aggravating role, the court must "determine whether the defendant exercised some control over others involved in the commission of the offense [or was] responsible for organizing other for the purpose of carrying out the crime." *United States v. Sandavol*, 146 F.3d 712, 717 (9th Cir. 1998).  For an aggravated role to be applied there must be evidence of a "significant role" in recruiting or supervising participants. *United States v. Greenfield*, 44 F.3d 544, 548 (2nd Cir. 1994).  This Court has held that there must be "control over others;" even a defendant with an important role in the offence cannot per se be deemed a manager. *United States v. Hoac*, supra..  "The court must focus on what the defendant did, in relation to at least one other participant, in the commission of the offense." *United States v. Jordan*, 291 F.3d 1091, 1098 (9th Cir. 2002).

> For an increase under section 3B1.1 to be appropriate, there. . . must be evidence that the defendant exercised some control over others involved in the commission of the offense [or was] responsible for organizing others for the purpose of carrying out the crime.

*United States v. Harper*, 33 F.3d 1143, 1150-51 (9th Cir. 1994)(emphasis added).

In applying the three §3B1.1(b)(3) level enhancement for a being a supervisor in a five or more participant crime, the district court is required to first determine whether Mr. Jackson's offense involved five or more individuals who each criminally responsible. *United States v. Helmy*, 951 F.2d 988, 997 (9th Cir. 1991).  A "participant" is "a person who is criminally responsible for the commission of the offense.

Formal Objections                          -8-

U.S.S.G. § 3B1.1, comment n.1.  In *United States v. King*, 257 F.3d 1013 (9th Cir. 2001) the Court held that defendant's employees could not be "participants" because they were "innocent clerical workers." *See also United States v. Mann*, 161 F.3d 840, 867 (5th Cir. 1998)("A finding that other persons 'knew what was going on' is not a finding that these persons were criminally responsible for commission of an offense.").

   The evidence at trial showed that Mr. Jackson and Mr. Bolden were involved in the crime, but there was no evidence to show that Mr. Jackson knew anyone else was misrepresenting any material information to investors.

Dated: September 3, 2014
                              Respectfully submitted,

                              HEATHER E. WILLIAMS,
                              Federal Defender

                              /s/ Douglas Beevers
                              _____
                              DOUGLAS BEEVERS
                              Assistant Federal Defender
                              ATTORNEY FOR
                              CHRISTOPHER JACKSON

Formal Objections                    -9-